**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|                                               |   |                              |
|-----------------------------------------------|---|------------------------------|
| MICHAEL J. GORHAM,                            | * |                              |
|                                               | * |                              |
| Plaintiff,                                    | * |                              |
|                                               | * |                              |
| v.                                            | * | Civil Case No.: ELH-17-2732  |
|                                               | * |                              |
| STATE OF MARYLAND,                            | * |                              |
| DEPARTMENT OF GENERAL SERVICES                | * |                              |
|                                               | * |                              |
| Defendant.                                    | * |                              |
|                                               | * |                              |

\* \* \* \* \* \* \* \* \* \* \* \* \*

### MEMORANDUM OPINION

In this employment discrimination case, plaintiff Michael J. Gorham filed suit against defendant State of Maryland, Department of General Services ("MDGS" or "Department"). ECF 1. He alleges disparate treatment on the basis of race as well as retaliation, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq. Id.*

Pending before this court is defendant's pre-discovery motion to dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) or, in the alternative, for summary judgment. ECF 4. The motion is supported by a memorandum of law (ECF 4-1) (collectively, the "Motion") and several exhibits. Plaintiff opposes the Motion (ECF 7), supported by a memorandum (ECF 7-1) (collectively, "Opposition"), and has also submitted exhibits. Defendant did not file a reply.

No hearing is necessary to resolve the Motion. *See* Local Rule 105.6 (D. Md. 2016). For the reasons stated below, the Motion will be granted in part and denied in part.

# I.    Factual Background[1]

In 2007, MDGS hired plaintiff, an African-American, as a Maintenance Supervisor within the Facilities Operation and Maintenance, Multi-Service Division ("FOM"). ECF 1 ¶¶ 14-15; ECF 4-1 at 2. As a Maintenance Supervisor, plaintiff's responsibilities included reporting to and assisting the Regional Manager in matters of procurement, building maintenance operation, and supervising subordinate employees. ECF 1, ¶ 16. Throughout the course of plaintiff's employment, as positions became available, he "continuously" applied for promotions to become a Regional Manager. *Id.* ¶ 18.

Barbara Bauman, who is Caucasian, is the Superintendent of the Department. She "has been the selecting official for the Regional Manager positions from 2008 to present." *Id.* ¶ 19. According to plaintiff, instead of selecting him, MDGS hired several less qualified Caucasian employees to fill Regional Manager positions. *Id.* ¶¶ 20-21. They included Delbert Stallings, who was promoted from a Maintenance Mechanic in or around 2008, and Nicole Leary, who was promoted in 2016 from the position of Administrative Assistant. *Id.* ¶ 21. Additionally, the Department hired Mike Ireland in 2011 and Michael Kane in 2013 to serve in the position of Regional Manager. *Id.*

In the beginning of 2016, Adrian Randall, an African-American, held the Regional Manager position for Region 3 (South Baltimore). Bauman Aff., ECF 4-3 at 1-5, ¶ 5. Randall informed MDGS that he intended to retire, on or about June 30, 2016. *Id.* at 3, ¶ 12. Accordingly, to fill the impending vacancy, Bauman issued an email announcement notifying "a broad range of employees in FOM who expressed interest in [the] position," including plaintiff, of the opportunity to be considered for the position. ECF 4-3 at 6 (email); *see also* ECF 4-3 at 2,

---

[1] Given the posture of the case, the facts are largely derived from plaintiff's Complaint. *See* ECF 1.

¶ 6; Pl.'s Opp., ECF 7-1 at 7. The email provided the job specifications, requested that potential applicants "make sure" they met the minimal job qualifications, and advised that candidates would be required to bring an application or resume to a subsequent interview. ECF 4-3 at 6. According to plaintiff, he inquired why the position was not publicly advertised, but Bauman did not provide any explanation. ECF 1, ¶¶ 23-24.

Nine employees, including plaintiff and two other African-Americans, responded to Bauman's email and were scheduled for interviews. Bauman Aff., ECF 4-3 at 2, ¶ 7. According to the Department, because Bauman's brother, Brian Kramer, applied for the position, "[a] group of panelists were selected to conduct the interview process in order to distance [] Bauman from the selection process." ECF 4-1 at 2 n.1.

The four-person MDGS panel included one African-American employee. Bauman Aff., ECF 4-3, at 2, ¶ 8. During the interviews, the panel asked each candidate fourteen identical questions, and took notes on the responses, and included their positive and negative impressions. *Id.* ¶¶ 9-10. The panelists scored the candidates' responses and tallied their scores from each response to reach a total. *Id.* at 3, ¶ 11. A candidate's final rating equaled the sum of each of the panelist's individual scores. *Id.*

The interview notes for Gorham are docketed at ECF 4-3 at 12-19. The rating sheets are docketed at ECF 4-3 at 20-36. The totals for each candidate for found at ECF 4-3 at 37-38.

In June 2016, the panel selected Kramer to succeed Randall as Regional Manager for South Baltimore, because he was the candidate with the highest combined total score. ECF 4-3 at 3, ¶ 11; ECF 4-3 at 37-38; ECF 1, ¶ 25. According to the Department, plaintiff scored the lowest of all nine applicants. ECF 4-3 at 37-38. However, plaintiff contends that he was more

experienced than Kramer, because he had three more years at MDGS and had worked in a supervisory capacity, while Kramer had not. ECF 1, ¶¶ 26-27.

Additionally, plaintiff contends that Caucasian Maintenance Supervisors have a 7:00 a.m. to 3:00 p.m. work schedule, while he, the sole African-American Maintenance Supervisor, has a less favorable work schedule of 8:30 a.m. to 5:00 p.m. *Id.* ¶ 29.[2] Although plaintiff has requested that Bauman "change his schedule to match those of his colleagues," Bauman has repeatedly denied his requests. *Id.* ¶ 30. Moreover, after plaintiff changed his schedule to match those of the Caucasian Maintenance Supervisors, Bauman reinstituted his original schedule "without adequate justification." *Id.* ¶¶ 31-32.

On or about July 22, 2016, "because of his non-selection" to replace Randall as Regional Manager of South Baltimore, plaintiff filed a complaint of employment discrimination against MDGS with the Equal Employment Opportunity Commission ("EEOC"). ECF 1-1 at 1. The EEOC informed plaintiff that it "had complied with the law and notified the employer that [he] filed a charge" and instructed plaintiff to sign and return the attached "Charge of Discrimination" ("Charge") form. *Id.*

Plaintiff signed the Charge on July 30, 2016, alleging discrimination based only on race. *Id.* at 4. Plaintiff did not allege that he was subject to any other type of discrimination, such as retaliation. *See id.* (the specific box to be checked for retaliation is left blank). In his Charge, under the section "DATE(s) DISCRIMINATION TOOK PLACE," plaintiff alleged that he was subject to discrimination only on one date: June 28, 2016. *Id.* In the section titled "The Particulars Are," plaintiff said, in part, *id.*: "In late June [2016] I was afforded an interview for [the position of Maintenance Supervisor] which I have continually expressed an interest in.

---

[2] It is not readily apparent why the schedule of 8:30 a.m. to 5:00 p.m. is less favorable.

However, despite my years of experience and record of performance, I was rejected in favor of a lessor [sic] qualified White Male . . . ." Further, he said, *id.*: "I believe I have been denied a promotion because of my race, Black . . . ."

As a MDGS employee, plaintiff is subject to biannual performance evaluations from his Regional Manager. Bauman Aff., ECF 4-3, ¶ 13. As the "appointing authority" of Regional Managers, Bauman reviews and countersigns the performance evaluations. *Id.* ¶ 14. According to plaintiff, prior to Randall's retirement on or about June 30, 2016, Randall completed and signed plaintiff's performance evaluation. ECF 1, ¶ 34. Further, plaintiff contends that, because he filed an EEOC Charge and Bauman believed that Randall had given him an improper score, Bauman reevaluated plaintiff in August 2016 and "inexplicably lowered [his score] to Satisfactory, with a score of 2.41." *Id.* ¶¶ 33, 35-36, 59. According to plaintiff, his lowered evaluation score was "used against" him by MDGS as a basis not to promote him. ECF 4-3 at 45.

The Department, on the other hand, contends that Bauman countersigned the evaluation on August 23, 2016, when the Department had no knowledge of plaintiff's EEOC Charge. It claims that plaintiff's Charge "was not received by the State of Maryland until August 23, 2016." ECF 4-1 at 3. MDGS relies on the affidavit of Glynis Watford as to the date that the State received notice. *See* Watford Aff., ECF 4-4.

Since 2007, Watford has been the Statewide EEO Coordinator of the Department of Budget and Management. *Id.* ¶ 1. As part of her duties, Watford "often receive[s] Notices of Charges of Discrimination when complaints have been filed with the [EEOC] by Maryland State employees. *Id.* ¶ 4. According to Watford, she received an email notice from the EEOC as to plaintiff's Charge "on or about August 23, 2016." *Id.* ¶ 5. *See also* ECF 4-4 at 3 (email notice). The Charge itself was received on August 23, 2016. ECF 4-4 at 2, ¶ 6. Thereafter, she

forwarded the EEOC Charge to Robert A. McFarland, Assistant Attorney General, Department of General Services. *Id.*

Moreover, MDGS contends that Bauman did not reduce Randall's initial evaluation score. ECF 4-1 at 12. Instead, because Randall had improperly entered plaintiff's scores as "mid-term evaluations," Bauman merely corrected the evaluation "by entering the *identical* scoring information on the end-cycle column and submitted the corrected version to the plaintiff for review and signature." *Id.* (citing Bauman Aff., ECF 4-3, ¶¶ 12-16) (emphasis in original). According to MDGS, the performance evaluation from Bauman "was identical to that actually done by [] Randall before his retirement . . . ." ECF 4-1 at 12.

## II.      Legal Standards

Plaintiff alleges that, in violation of Title VII, MDGS discriminated against him on the basis of his race and retaliated against him for filing an EEOC Charge. ECF 1. MDGS seeks dismissal and/or summary judgment as to each of plaintiff's claims. ECF 4.

In particular, the Department contends that this court lacks subject matter jurisdiction to consider the failure to change work schedule claim under Count One and Count Two, and plaintiff's retaliation claim in Count Two, because plaintiff failed to exhaust his administrative remedies, as required by Title VII. ECF 4-1 at 6-11. Further, MDGS posits that, with respect to plaintiff's retaliation claim, because the dates of the alleged retaliatory actions are prior to MDGS having received notice of plaintiff's EEOC Charge, plaintiff has failed to state a claim upon which relief can be granted. *Id.* at 11-13. Finally, MDGS argues that, with respect to plaintiff's claim of racial discrimination, there is no dispute of any material fact, thereby entitling it to summary judgment as a matter of law. *Id.* at 13-17.

**A.**

"Motions to dismiss for failure to exhaust administrative remedies are governed by [Federal Rule of Civil Procedure] 12(b)(1) for lack of subject matter jurisdiction." *Clarke v. DynCorp Int'l LLC*, 962 F. Supp. 2d 781, 786 (D. Md. 2013) (quotation marks and citation omitted). Under Rule 12(b)(1), the plaintiff bears the burden of proving, by a preponderance of evidence, the existence of subject matter jurisdiction. *See Demetres v. East West Const., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015); *see also The Piney Run Pres. Ass'n v. The Cty. Comm'rs Of Carroll Cty.*, MD, 523 F.3d 453, 459 (4th Cir. 2008). A Rule 12(b)(1) motion should be granted "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Clarke*, 962 F. Supp. 2d at 786 (quotation marks and citation omitted).

A challenge to subject matter jurisdiction under Rule 12(b)(1) may proceed "in one of two ways": either a facial challenge, asserting that the allegations pleaded in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting "'that the jurisdictional allegations of the complaint [are] not true.'" *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citation omitted) (alteration in original); *see also Durden v. United States*, 736 F.3d 296, 300 (4th Cir. 2013). A factual challenge can assert that facts outside the four corners of the complaint preclude the exercise of subject matter jurisdiction. *Id.*

In a facial challenge, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns*, 585 F.3d at 192. On the other hand, in a factual challenge, "the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Id.* In that circumstance, the court "may regard the pleadings as mere evidence on the issue and may

consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004); *see also United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347-48 (4th Cir. 2009); *Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999).

Notably, the court may take judicial notice of the existence and contents of EEOC proceedings "if necessary to decide issues like exhaustion of administrative remedies[.]" *Clarke*, 962 F. Supp. 2d at 787. But, "it may not take judicial notice of the *truth* of matters outside the challenged pleading." *Id.* (emphasis in *Clarke*).

## B.

Under Rule 12(b)(6), a defendant may test the legal sufficiency of a complaint by way of a motion to dismiss. *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see*

*Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ."); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). But, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, ___ U.S. ___, 135 S. Ct. 346, 346 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. MTA*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011). But, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal

conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Courts generally do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses'" through a Rule 12(b)(6) motion. *Edwards,* 178 F.3d at 243 (quoting *Republican Party v. Martin,* 980 F.2d 943, 952 (4th Cir. 1992)). However, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.,* 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan,* 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst,* 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint.'" Goodman,* 494 F.3d at 464 (quoting *Forst,* 4 F.3d at 250) (emphasis added in *Goodman* ).

In evaluating the sufficiency of a complaint in connection with a Rule 12(b)(6) motion, a court ordinarily "may not consider any documents that are outside of the complaint, or not expressly incorporated therein . . . ." *Clatterbuck v. City of Charlottesville,* 708 F.3d 549, 557 (4th Cir. 2013); *see Bosiger,* 510 F.3d 442, 450 (4th Cir. 2007). However, a court may properly consider documents incorporated into the complaint or attached to the motion to dismiss, "'so long as they are integral to the complaint and authentic.'" *U.S. ex rel. Oberg v. Pennsylvania Higher Educ. Assistance Agency,* 745 F.3d 131, 136 (4th Cir. 2014) (quoting *Philips v. Pitt Cty.*

*Memorial Hosp.,* 572 F.3d 176, 180 (4th Cir. 2009)); *see Six v. Generations Federal Credit Union*, 891 F.3d 508, 512 (4th Cir. 2018); *Goldfarb v. Mayor & City Council of Balto.*, 791 F.3d 500, 508 (4th Cir. 2015); *Anand v. Ocwen Loan Servicing, LLC,* 754 F.3d 195, 198 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.,* 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied,* 543 U.S. 979 (2004).

To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'"  *Chesapeake Bay Found., Inc. v. Severstal Sparrows Pint,* LLC, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted; emphasis in original). *See also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

However, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it." *Goines*, 822 F.3d at 167 (citing *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 455 (7th Cir. 1998)). "When the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Goines*, 822 F.3d at 167. Conversely, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id.*

A court may also "consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines*, 822 F.3d at 166 (citations omitted); *see also Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017), *cert. denied,*

138 S. Ct. 558 (2017); *Kensington Volunteer Fire Dep't. v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012).

<h2 style="text-align:center">C.</h2>

As noted, defendants have moved to dismiss or, in the alternative, for summary judgment. A motion styled in the alternative, to dismiss or for summary judgment, implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). When, as here, the movant expressly captions its motion "in the alternative," as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur, and the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5C Alan Wright & Arthur Miller, et al., Federal Practice & Procedure § 1366 (3d ed.) (hereinafter, "Wright & Miller"). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id.* at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of

the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id*. at 165-67.

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448-49; *see Putney v. Likin*, 656 F. App'x 632, 638-640 (4th Cir. 2016) (per curiam); *McCray v. Maryland Dep't of Transp.*, 741 F.3d 480, 483 (4th Cir. 2014). A party "needs an 'adequate opportunity' to present its case and 'demonstrate a genuine issue of material fact.'" *Adams Housing, LLC v. City of Salisbury, Maryland*, 672 Fed. App'x 220, 222 (4th Cir. 2016) (citation omitted). Indeed, granting summary judgment before discovery "can be particularly inappropriate when a case involves complex factual questions about intent and motive." *Harrods*, 302 F.3d 248 (citations omitted).

However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (hereinafter, "*Harrods*") (quoting *Evans v. Tech's. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)); *see also Dave & Buster's, Inc. v. White Flint Mall, LLLP*, 616 F. App'x 552, 561 (4th Cir. 2015). To raise adequately the issue that discovery is needed, the nonmovant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, [he] cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing the affidavit requirement of former Rule 56(f)). A nonmoving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of

material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x 274 (4th Cir. 2008), *cert. denied*, 555 U.S. 885 (2008).

Here, plaintiff filed an affidavit pursuant to Fed. R. Civ. P. 56(d), expressly advocating for discovery. ECF 7-2. Plaintiff contends that discovery is necessary for many reasons, including the fact that the EEOC failed to investigate plaintiff's EEOC Charge, such that no investigation or discovery regarding plaintiff's claims has yet occurred, and he has a need to discover information regarding: (1) how Kramer was deemed qualified for the Regional Manager position; (2) how applicants' experience and resumes factored into the decisions for promotion or hiring to a Regional Manager position; (3) MDGS's alleged reasons for not promoting plaintiff; (4) how MDGS selected its four-person interview panel and how the panel weighed the interviewees and their responses; (5) when MDGS became aware of plaintiff's EEOC Charge; and (6) whether Bauman lowered plaintiff's performance evaluation.[3]

In *McCray*, 741 F.3d 480, the Fourth Circuit considered whether the district court erred when it granted summary judgment to the defense in a Title VII case, before the plaintiff had an opportunity to conduct requested discovery. *Id.* at 483. The Fourth Circuit reiterated that discovery is appropriate when "the main issue" is "one of motive" and when "most of the key evidence lies in the control" of the party moving for summary judgment. *Id.* at 484. It determined that the plaintiff's Title VII claims required the plaintiff to show "that she was fired because of discriminatory reasons," and that such evidence was within the control of the MTA. *Id.* "Absent discovery," said the Court, the plaintiff lacked "adequate access to this evidence, and therefore no way to shield herself from a premature summary judgment motion." *Id.* It reasoned, *id.* at

---

[3] This Memorandum Opinion should not be construed to suggest that plaintiff is necessarily entitled to all of these categories of discovery.

483: "Summary judgment before discovery forces the non-moving party into a fencing match without a sword or mask." The Fourth Circuit concluded that summary judgment was premature under Rule 56(d). *Id.* at 481, 484.

As plaintiff demonstrates in his Rule 56(d) Affidavit, discovery in this case will reveal, *inter alia*, when, in fact, MDGS acquired knowledge of the filing by plaintiff of an EEOC Charge, and whether MDGS reduced plaintiff's Performance Evaluation or merely duplicated Randall's original rating. *See* ECF 7-2 ¶¶ 6-7.

Discovery will also shed light on the factual question of whether Bauman's alleged December 2016 modification of plaintiff's work schedule constitutes an adverse action. *See Benningfield v. City of Houston*, 157 F.3d 369, 377 (5th Cir. 1998) ("Merely changing [plaintiff's] hours, without more, does not constitute an adverse employment action.") (citations omitted); *White v. City of Annapolis (MD)*, No. CIV. JFM-13-1330, 2015 WL 5009853, at *8 (D. Md. Aug. 21, 2015), *aff'd sub nom. White v. City of Annapolis, Md.*, 639 F. App'x 209 (4th Cir. 2016) ("Being reassigned is only actionable if the plaintiff can cite a 'significant detrimental effect,' such as a 'decrease in compensation, job title, level of responsibility, or opportunity for promotion.'" (quoting *James*, 368 F.3d at 376); *but see Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 69 (2006) ("A schedule change in an employee's work schedule may make little difference to many workers, but may matter enormously to a young mother with school-age children.") (citation omitted).

Given the posture of this case, the lack of any opportunity for discovery, and the relevance of issues, such as motive, summary judgment would be premature. Therefore, I shall construe the Motion solely under Rule 12(b), not Rule 56.

**D.**

In general, there are two avenues *at trial* by which a plaintiff may prove a violation of Title VII. *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284 (4th Cir. 2004) (en banc), abrogated on other grounds by *University of Texas Southwestern Med. Ctr. v. Nassar*, 570 U.S. 338 (2013). The plaintiff's first avenue is to offer "'direct or indirect'" evidence of discrimination under "'ordinary principles of proof.'" *Burns v. AAF-McQuay, Inc.*, 96 F.3d 728, 731 (4th Cir. 1996) (citation omitted), *cert. denied*, 520 U.S. 1116 (1997). The plaintiff's second avenue is to follow the burden-shifting approach first articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See, e.g.*, *Young v. United Parcel Serv., Inc.*, ____ U.S. ____, 135 S. Ct. 1338, 1345 (2015) (construing the Pregnancy Discrimination Act); *Guessous v. Fairview Prop. Inv., LLC*, 828 F.3d 208, 216 (4th Cir. 2016) (discussing the three steps of the *McDonnell Douglas* framework).

The *McDonnell Douglas* proof scheme is "a procedural device, designed only to establish an order of proof and production." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 521 (1993) (emphasis omitted). Under the *McDonnell Douglas* approach, the "ultimate burden of persuasion [at trial] never 'shifts' from the plaintiff," who must prove intentional unlawful discrimination. *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 456 n.2 (4th Cir. 1989) (citation omitted). Notably, "the *McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination." *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985).

If the plaintiff chooses to proceed at trial under the *McDonnell Douglas* approach, the plaintiff must first establish a "prima facie case of discrimination." *Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 294 (4th Cir. 2010); *see Abilt v. Central Intelligence Agency*, 848 F.3d 305, 315 (4th Cir. 2017). Although the precise formulation of the required prima facie

showing will vary in "different factual situations," *McDonnell Douglas*, 411 U.S. at 802 n.13, the plaintiff is generally required to show that the employer took adverse action against an applicant "under circumstances which give rise to an inference of unlawful discrimination." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

If a plaintiff establishes a prima facie case of unlawful discrimination, "a presumption of illegal discrimination arises, and the burden of production shifts to the employer" to produce evidence of a legitimate, non-discriminatory reason for its adverse employment action. *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 336 (4th Cir. 2011); *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000); *Hurst v. District of Columbia*, 681 F. App'x 186, 189-90 (4th Cir. 2017) (per curiam). "If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted." *Burdine*, 450 U.S. at 255. In that circumstance, "the *McDonnell Douglas* framework—with its presumptions and burdens—is no longer relevant," and "simply drops out of the picture." *St. Mary's Honor Ctr.*, 509 U.S. at 510-11. The plaintiff must then prove, by a preponderance of evidence, "that the [employer's] proffered reason was not the true reason for the employment decision" and that the plaintiff "has been the victim of intentional discrimination." *Burdine*, 450 U.S. at 256; *see also Reeves*, 530 U.S. at 143; *St. Mary's Honor Ctr.*, 509 U.S. at 516-20; *Adams v. Trustees of Univ. of North Carolina-Wilmington*, 640 F.3d 550, 560 (4th Cir. 2011) ("[I]n demonstrating the Defendants' decision was pretext, [plaintiff] had to prove '*both* that the reason was false, *and* that discrimination was the real reason.'") (quoting *Jiminez v. Mary Washington Coll.*, 57 F.3d 369, 378 (4th Cir. 1995)) (emphasis in original).

Conversely, if the defendant does not submit evidence of a legitimate basis for its actions, the factfinder may "infer discriminatory animus because experience has proved that in the

absence of any other explanation it is more likely than not that those actions were bottomed on impermissible considerations." *Furnco Const. Corp. v. Waters*, 438 U.S. 567, 579-80 (1978). And, if the defendant fails to meet the burden of producing "evidence which, *taken as true*, would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action," then "the court must award judgment to the plaintiff as a matter of law." *St. Mary's Honor Ctr.*, 509 U.S. at 509 (emphasis in original). This is because a legal presumption of intentional discrimination has been established. *Id.* at 510 n.3; *see Burdine*, 450 U.S. at 255 n.8 ("[T]he allocation of burdens and the creation of a presumption by the establishment of a prima facie case is intended progressively to sharpen the inquiry into the elusive factual question of intentional discrimination.").

As noted, these two approaches establish the common methods by which a plaintiff may prove intentional employment discrimination *at trial*. *See Burns*, 96 F.3d at 731. At the motion to dismiss stage, these approaches merely serve to inform a court's evaluation of the allegations. *Cf. Pettis v. Nottoway Cty. Sch. Bd.*, 592 F. App'x 158, 160 (4th Cir. 2014) (stating that a plaintiff asserting racial discrimination "may avoid summary judgment by proceeding under the burden-shifting framework established in *McDonnell Douglas* . . . .").

In *Swierkiewicz v. Sorema*, 534 U.S. 506, 510 (2002), the Supreme Court explained that the "prima facie case under *McDonnell Douglas* . . . is an evidentiary standard, not a pleading requirement." The Court stated that it had "never indicated that the requirements for establishing a prima facie case under *McDonnell Douglas* also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss." *Id.* at 511. Thus, the Court said: "[A]n employment discrimination plaintiff need not plead a prima facie case of discrimination . . . ." *Id.* at 515; *see also McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin.*, 780

F.3d 582, 584 (4th Cir. 2015), *cert. denied*, 136 S. Ct. 1162 (2016).

However, as the Second Circuit has observed, the Supreme Court's holding in *Swierkiewicz* is arguably in tension with the Court's subsequent rulings in *Iqbal* and *Twombly*. *See Littlejohn v. City of New York*, 795 F.3d 297, 307 (2d Cir. 2015). On the one hand, "[r]eading *Swierkiewicz* on its face, it appears to have meant that a Title VII plaintiff is not required to plead facts supporting even a minimal inference of discriminatory intent." *Id.* at 309. On the other hand, in *Twombly*, the Court said that a plaintiff must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. And, in *Iqbal*, the Court clarified that the heightened pleading standard of *Twombly* is applicable in "'all civil actions' . . . ." *Iqbal*, 556 U.S. at 684.

In *Woods*, 855 F.3d at 648, the Fourth Circuit indicated that although a plaintiff "need not plead facts sufficient to establish a prima facie case of race-based discrimination to survive a motion to dismiss," the "pleading standard established in *Iqbal* and *Twombly* applies . . . ." Thus, the question at the motion to dismiss stage is whether the plaintiff has stated "a plausible claim for relief under Title VII . . . ." *Ciociola v. Balt. City Bd. of Sch. Commissioners*, CCB-15-1451, 2016 WL 125597, at *4 (D. Md. Jan. 12, 2016).

Different elements are required to establish a prima facie case of discrimination than are required to establish a prima facie case of retaliation. *Compare Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 281 (4th Cir. 2015) (en banc) *with Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd*, 566 U.S. 30 (2012). But, Title VII race discrimination and Title VII retaliation are both assessed according to the standards set forth above. *See Guessous*, 828 F.3d at 216 (stating that the same "framework applies in employment discrimination and retaliation cases"). At a minimum, plaintiff must plead facts that make it

plausible that he was subjected to discrimination on the basis of race and retaliation as a result of engaging in protected activity.

### III.     Discussion

Plaintiff alleges that, in violation of Title VII, the Department discriminated against him on the basis of his race (Count One), and retaliated against him for filing an EEOC Charge (Count Two). ECF 1.

Title VII prohibits an employer from discriminating against "any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e−2(a)(1); *DeMasters v. Carilion Clinic, et al.*, 796 F.3d 409, 416 (4th Cir. 2015); *Boyer-Liberto*, 786 F.3d at 298; *Freeman v. Dal-Tile Corp.*, 750 F.3d 413, 420 (4th Cir. 2014). It also prohibits an employer from retaliating against an employee because the employee filed a grievance or complaint regarding an employment practice that allegedly violated Title VII's antidiscrimination provision. *See* 42 U.S.C. § 2000e-3(a); *DeMasters*, 796 F.3d at 415. Of relevance here, Title VII states, in part, that an employer may not discriminate against an employee because he "has opposed any practice made an unlawful employment practice . . . , or because he has made a charge." 42 U.S.C.A. § 2000e-3.

Each claim is discussed below.

### A.  Title VII Exhaustion

First, MDGS argues that this court lacks subject matter jurisdiction to consider plaintiff's retaliation claim in Count Two, because plaintiff failed to exhaust his administrative remedies at the EEOC. ECF 4-1 at 6-11. Further, MDGS contends that plaintiff's allegations regarding his work schedule remain unexhausted under both Count One and Count Two of his Complaint. *Id.*

For the reasons discussed below, plaintiff exhausted his retaliation claim. But, his work schedule allegations were not exhausted with respect to his race discrimination claim in Count One.

### 1. Exhaustion Standard

Under Title VII, a plaintiff must file a charge of discrimination with the EEOC, or a comparable state agency, before filing suit in federal court. 42 U.S.C. § 2000e–5(f)(1); *see Jones v. Calvert Grp.*, 551 F.3d 297, 300 (4th Cir. 2009); *see also Nnadozie v. Genesis Healthcare Corp.*, ___ Fed. App'x ___, 2018 WL 1830935, at *7 (4th Cir. Apr. 17, 2018). The charge must "describe generally the action or actions complained of," in order to provide the charged party with adequate notice. 29 C.F.R. § 1601.12(b); *see Jones v. Southpeak Interactive Corp. of Delaware*, 777 F.3d 658, 670 (4th Cir. 2015) ("We recognize that a primary objective of exhaustion requirements is to put parties on notice of the allegations against them."); *Balas v. Huntington Ingalls Indus.*, Inc., 711 F.3d 401, 407 (4th Cir. 2013). The "exhaustion requirement ensures that the employer is put on notice of the alleged violations so that the matter can be resolved out of court if possible." *Miles v. Dell, Inc.*, 429 F.3d 480, 491 (4th Cir. 2005).

Of import, the exhaustion requirement is not "simply a formality to be rushed through so that an individual can quickly file his subsequent lawsuit." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 510 (4th Cir. 2005). Rather, together with the agency investigation and settlement process it initiates, the requirement "'reflects a congressional intent to use administrative conciliation as the primary means of handling claims, thereby encouraging quicker, less formal, and less expensive resolution of disputes.'" *Balas*, 711 F.3d at 407 (quoting *Chris v. Tenet*, 221 F.3d 648, 653 (4th Cir. 2000)). "Allowing [the EEOC] first crack at these cases respects Congress's intent . . . ." *Sydnor v. Fairfax Cty.*, 681 F.3d 591, 593 (4th Cir. 2012).

An aggrieved person must file a Title VII complaint with the EEOC within 180 days of the alleged discrimination, except in a "deferral" jurisdiction, where the period is 300 days. *See* 42 U.S.C. § 2000e-5(e)(1); *Edelman v. Lynchburg Coll.*, 300 F.3d 400, 404 & n.3 (4th Cir. 2002). Maryland is a deferral state. And, the Maryland Commission on Civil Rights is the applicable State enforcement agency. *See, e.g., Dewitt v. Clean Harbors Envtl. Servs., Inc.*, RDB-16-1705, 2017 WL 3116609, at *3 (D. Md. July 21, 2017).

The exhaustion requirement of Title VII functions as a jurisdictional bar in federal court. In *Balas*, 711 F.3d at 406, the Fourth Circuit said: "[F]ederal courts lack subject matter jurisdiction over Title VII claims for which a plaintiff has failed to exhaust administrative remedies." An aggrieved party who fails to comply with the applicable administrative procedures has failed to exhaust his administrative remedies, and is generally barred from filing suit. *See, e.g., Nnadozie*, 2018 WL 1830935, at *7; *Miles*, 429 F.3d at 491; *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132 (4th Cir. 2002). Failure to exhaust generally mandates dismissal. *See Lorenzo v. Rumsfeld*, 456 F. Supp. 2d 731, 734 (E.D. Va. 2006) (citing *Zografo v. Veterans Admin. Med. Ctr.*, 779 F.2d 967, 970 (4th Cir. 1985)).

Even when a plaintiff has filed a claim with the EEOC, a court cannot consider matters that were not properly raised during the EEOC process. To determine whether a plaintiff has "properly alleged [a claim] before the EEOC" in a manner satisfying the exhaustion requirement, courts "may look only to the charge filed with that agency." *Balas*, 711 F.3d at 408; *see also Chacko*, 429 F.3d at 506 ("This charge frames the scope of future litigation."); *Evans v. Tech.'s Applications & Serv. Co.*, 80 F.3d 954, 962-63 (4th Cir. 1996) ("The allegations contained in the administrative charge of discrimination generally operate to limit the scope of any subsequent judicial complaint."). Although courts "recognize that EEOC charges often are not completed by

lawyers and as such must be construed with utmost liberality," courts are "not at liberty to read into administrative charges allegations they do not contain." *Balas*, 711 F.3d at 408 (citations and quotation marks omitted). Indeed, "liberal construction only stretches so far." *Nnadozie*, 2018 WL 1830935, at *7. Thus, courts are constrained by the four corners of the Charge and the inference of "'any charges that would naturally have arisen from an investigation thereof . . . .'" *Balas*, 711 F.3d at 407-08 (citations omitted).

However, "[t]he touchstone for exhaustion is whether plaintiff's administrative and judicial claims are 'reasonably related,' not precisely the same . . . ." *Sydnor*, 681 F.3d at 595. The Court explained in *Sydnor*, 681 F.3d at 594: "[A]n administrative charge of discrimination does not strictly limit a Title VII suit which may follow. Instead, so long as a plaintiff's claims in her judicial complaint are reasonably related to her EEOC charge and can be expected to follow from a reasonable administrative investigation, she may advance such claims in her subsequent civil suit." *Accord Southpeak Interactive Corp. of Del.*, 777 F.3d at 669; *see Calvert Grp., Ltd.*, 551 F.3d at 300; *Evans*, 80 F.3d at 963. On the other hand, the Fourth Circuit has said that "a plaintiff fails to exhaust [her] administrative remedies where ... [her] administrative charges reference different *time frames*, actors, and discriminatory conduct than the central factual allegations in his formal suit." *Chacko*, 429 F.3d at 506 (emphasis added); *see Nnadozie*, 2018 WL 1830935, at *7.

The Fourth Circuit's opinion in *Jones v. Calvert Grp.*, 551 F.3d 297, provides guidance. In that case, the plaintiff filed a charge with the Maryland Commission on Human Relations, checking only the box for "retaliation." *Id.* She stated: "'I believe I am being forced to work in a hostile environment and subjected to differential treatment in retaliation for filing' [a prior] charge." *Id.*; *see id.* at 301. Plaintiff subsequently brought suit, alleging retaliation as well as race

and sex discrimination, in violation of Title VII. *Id.* at 299. She also alleged age discrimination, in violation of the ADEA. *Id.* The defendant moved to dismiss under Rule 12(b)(6). *Id.* After converting the motion to dismiss to a motion for summary judgment, the district judge entered judgment in favor of the defendant, on the merits. *Id.* at 299-301.

The Fourth Circuit concluded that the plaintiff had failed to exhaust administrative remedies. *Id.* at 299. It reasoned, *id.* at 301: "The...charge alleged that [plaintiff] was being retaliated against because she had filed [a previous] charge; it did not allege that she was discriminated against based on her age, sex, or race. Indeed, she checked only the 'retaliation' box on her EEOC charge and left unchecked the boxes for 'age,' 'sex,' or 'race.'"

*Belyakov v. Medical Science & Computing*, 86 F. Supp. 3d 430, 440 (D. Md. 2015), is also instructive. In *Belyakov*, the plaintiff applied for a job with the National Institutes of Health through the defendant staffing firm. *Id.* at 432. When plaintiff did not get the job, he filed suit against the defendant, alleging age discrimination under the ADEA, as well as national origin discrimination and retaliation under Title VII. In granting summary judgment in favor of the staffing agency as to the national origin claim, the district judge said: "Belyakov did not check the box for national origin discrimination in his EEOC charge, nor did he claim national origin discrimination or allege any facts relating to his national origin . . . in the narrative portion of his EEOC charge." *Id.* at 440. Instead, the plaintiff "asserted only claims for, and alleged facts relating to, age discrimination in violation of the ADEA and retaliation in violation of Title VII . . . ." *Id.* Therefore, the court determined that the plaintiff failed to exhaust his national origin claim. *Id.*; *see also Byington v. NBRS Fin. Bank*, 903 F. Supp. 2d 342, 350 (D. Md. 2012) (finding that the plaintiff failed to exhaust her administrative remedies as to discrimination on the basis of age because she "did not check the box for discrimination based on age, and there is no

reference to age discrimination in the narrative portion of the document"); *Talbot v. Foodservice, Inc.*, 191 F. Supp. 2d 637, 640 (D. Md. 2002) (same, for disability discrimination).

### 2. EEOC Charge & Allegations Contained in Count Two, Paragraphs 56-74

The Department maintains that, because plaintiff's EEOC Charge alleged only discrimination on the basis of race, the retaliation claim asserted in Count Two, paragraphs 56-74, could not have been investigated by the EEOC. Therefore, it insists that the claim is not exhausted. ECF 4-1 at 9-10.

Plaintiff filed his EEOC Charge on July 30, 2016, alleging that he was subjected to discrimination on a single date, June 28, 2016, because he was not promoted. ECF 1-1. The Charge form asks the complainant to identify the type of discrimination, and plaintiff checked only the box for discrimination based on race. He did not check the box for retaliation. Nor did he allege a continuing violation. *Id.* In the area of the EEOC Charge dedicated to the "PARTICULARS" of his claim, plaintiff stated, *id.*:

> I.    I began my employment with the above named Respondent in or around August 2007 as a Maintenance Supervisor, the only Black holding such a position under the Superintendent Barbara Bauman, a White Female. I contend that throughout my tenure with Respondent only White Males and Females have been placed in Management positions. In late June I was afforded an interview for one of these positions which I have continually expressed an interest in. However, despite my years of experience and record of performance, I was rejected in favor of a lessor [sic] qualified White Male, Brian Kramer.

> II.   Respondent has not provided a reasonable explanation for its actions.

> III.  I believe I have been denied a promotion because of my race, Black in violation of Title VII . . . .

In contrast to what plaintiff stated in the Charge, the allegations contained within Paragraphs 56-74 of his Complaint relate to incidents that occurred between June 30, 2016 and December 2016. Prior to Randall's retirement on or about June 30, 2016, Randall completed and

signed plaintiff's performance evaluation. ECF 1, ¶ 34. Plaintiff filed the EEOC Charge on July 30, 2016, after MDGS selected Kramer for the position for which plaintiff had applied. *Id.* ¶25; ECF 1-1 at 4. According to plaintiff, in August 2016, after plaintiff filed his EEOC Charge, Bauman reevaluated plaintiff and "inexplicably lowered [his score] to Satisfactory, with a score of 2.41." *Id.* ¶¶ 33, 35-36, 59. Further, plaintiff contends that, as a result of his EEOC Charge, Bauman refused to change his schedule to match those of his Caucasian colleagues. ECF 1, ¶¶ 29-32; *see* ECF 7-1 at 16, 19 (stating that, in December 2016, Bauman prohibited plaintiff "from chang[ing] his work schedule to align with the work schedules of the white employees in the same position."). According to plaintiff, these were acts of retaliation.

In his EEOC Charge, plaintiff did not include the specific dates and facts that are outlined above. MDGS insists that, because the EEOC Charge did not set forth a claim for retaliation, the claim remains unexhausted. *See* ECF 4-1 at 7-10 (citing, *inter alia*, *Cohens v. MD Dept. of Human Resources*, 933 F. Supp. 2d 735 (D. Md. 2013); *Middleton v. Motley Rice, LLC*, Civ. No. 2:08-3256-CHW, 2010 WL 3167360 (D.S.C. Aug 9, 2010), *aff'd*, 445 Fed. Appx. 651 (4th Cir. 2011); *cert. denied.* 565 U.S. 1267 (2012)).

To be sure, the Charge fails to mention any retaliatory actions. But, in his Opposition, plaintiff maintains that he properly exhausted his claims because, pursuant to Fourth Circuit case law, "Title VII Plaintiffs are not required to amend complaints to include allegations that occur after a properly filed EEOC complaint, so long as the conduct was related to the charges pending before the EEOC." ECF 7-1 at 16 (citing *Nealon v. Stone*, 928 F.2d 584 (4th Cir. 1992); *Plunkett v. Potter*, 751 F. Supp. 2d 807, 811 (D. Md. 2010)). More specifically, plaintiff argues that a Title VII claimant can allege retaliation for the first time in federal court when, as here, it resulted from the filing an EEOC charge. ECF 7-1 at 16 (citing *Plunkett*, 751 F. Supp. 2d 807).

Under the factual circumstances presented here, MDGS's argument that plaintiff's retaliation claim is unexhausted is without merit. The posture is analogous to the circumstances presented in *Plunkett*, 751 F. Supp. 2d 807, and *Nealon*, 928 F.2d 584.

In *Plunkett*, a United States Postal Service ("USPS") employee filed an EEOC Charge, alleging discrimination based on her disability. 751 F. Supp. 2d at 809. The claimant alleged that, in response to her EEOC Charge, the USPS terminated her. *See id.* at 810. Thereafter, the claimant filed suit alleging retaliation, without first filing a second Charge with the EEOC regarding her termination. *See id.* The court rejected the defendant's argument that the retaliation claim was unexhausted, concluding that the claimant was "not required to file a separate charge of discrimination with the EEOC" and could "amend her initial Complaint to include her claim of retaliation as a result of her ultimate termination by the USPS." *Id.* at 813.

The *Plunkett* Court relied heavily upon the rationale set forth in *Nealon*. *See id.* at 811-12. In *Nealon*, 928 F.2d at 586, a U.S. Army employee filed an EEOC Charge alleging that she was subjected to unequal pay based on gender. After the EEOC initially ruled in her favor, the EEOC reversed itself, and the claimant filed suit in federal court. *Id.* at 587. The claimant then sought to add a claim for retaliation, alleging that the Army retaliated against her for filing her initial EEOC Charge. *Id.* at 590. In holding that "a plaintiff may raise [a] retaliation claim for the first time in federal court," the Fourth Circuit found persuasive the rationale of the Seventh Circuit in *Malhotra v. Cotter & Co.*, 885 F.2d 1305 (7th Cir.1989). *See Nealon*, 928 F.2d at 590. The *Malhotra* Court said, 885 F.2d at 1312:

> [H]aving once been retaliated against for filing an administrative charge, the plaintiff will naturally be gun shy about inviting further retaliation by filing a second charge complaining about the first retaliation.... [W]e [therefore] join the other circuits that have spoken to the question in adopting the rule that a separate administrative charge is not prerequisite to a suit complaining about retaliation for filing the first charge.

Thus, the *Nealon* Court concluded that, because the claimant alleged that the Army retaliated against her for filing her initial EEOC Charge, she was entitled to have her retaliation claim heard by the district court, even though it had not been submitted to the EEOC. *Id.*

MDGS's reliance on *Cohens*, 933 F. Supp. 2d 735, and *Middleton*, 2010 WL 3167360, is misplaced. In both cases, the claimants' sole EEOC Charge failed to set forth a claim for retaliation. *Cohens*, 933 F. Supp. 2d at 740; *Middleton*, 2010 WL 3167360, at *5. As a result, the claimants were prohibited from asserting a retaliation claim in federal court, because the claims were administratively unexhausted. *Cohens*, 933 F. Supp. 2d at 744; *Middleton*, 2010 WL 3167360, at *7. Unlike in this case, however, the plaintiffs' claims for retaliation centered on conduct that allegedly occurred prior to the filing of their EEOC Charge. *See Cohens*, 933 F. Supp. 2d at 740; *Middleton*, 2010 WL 3167360, at *5-6. In other words, unlike Gorham here, the claimants in *Cohens* and *Middleton* did not allege that they were subject to retaliation *after* having filed their EEOC Charge.

In this case, plaintiff's single EEOC Charge of July 30, 2016, alleges only that he was subject to discrimination on the basis of his race. ECF 1-1 at 4. Nonetheless, like the claimants in *Nealon* and *Plunkett*, Gorham has alleged that his employer, MDGS, retaliated against him for filing that Charge. ECF 1 ¶¶ 56-59. Thus, at least at this stage, pursuant to the Fourth Circuit's rationale in *Nealon*, plaintiff is entitled to have his retaliation claim heard in district court regarding both his work schedule and his Performance Evaluation.

### 3. EEOC Charge & Allegations Contained in Count One, Paragraphs 38-55

Count One of the Complaint alleges race discrimination. Although plaintiff's December 2016 work schedule allegations are exhausted with respect to his retaliation claim in Count Two, plaintiff has not exhausted his disparate treatment claim in Count One, in which he alleges that

he has "a less favorable schedule than his Caucasian counterparts." ECF 1, ¶ 40. Such an allegation is not reasonably related to the factual allegations set forth in plaintiff's EEOC Charge, and cannot be expected to follow from a reasonable administrative investigation. *See Southpeak Interactive Corp. of Del.*, 777 F.3d at 669; *Calvert Grp., Ltd.*, 551 F.3d at 300. Indeed, as discussed above, plaintiff's EEOC Charge alleges only that he was "denied a promotion because of [his] race . . . ." *See* ECF 1-1 at 4.

The factual allegations included in plaintiff's EEOC Charge to support his claim center wholly around his qualifications for the Regional Manager position, and Bauman's alleged pattern of selecting less qualified Caucasian applicants. *See id.* There is no allegation that plaintiff was subjected to "a less favorable [work] schedule" or other disparate working conditions.

In sum, plaintiff has failed to exhaust these allegations with respect to his disparate treatment claim, because the "administrative charges reference different *time frames*, actors, and *discriminatory conduct* than the central factual allegations in his formal suit." *Chacko*, 429 F.3d at 506 (emphasis added); *see Nnadozie*, 2018 WL 1830935, at *7. Indeed, the only date of discrimination alleged in plaintiff's EEOC Charge is June 28, 2016. ECF 1-1 at 4. As the Foruth Circuit recently said, "liberal construction only stretches so far." *Nnadozie*, 2018 WL 1830935, at *7. Accordingly, this Court lacks subject matter jurisdiction to consider plaintiff's work schedule allegations with respect to his race discrimination claim in Count One.

### B.  Sufficiency of Plaintiff's Complaint –Retaliation (Count Two)

MDGS contends that Count Two fails to state a claim for which relief can be granted, because MDGS's alleged retaliatory actions occurred prior to the time that MDGS received notice that plaintiff filed an EEOC Charge. ECF 4-1 at 11-13.

To state a prima facie case of retaliation under Title VII, a plaintiff must aver that: (1) he engaged in protected activity; (2) the employer took an adverse action against him[4]; and (3) the protected activity and the adverse action were causally connected. *Boyer-Liberto*, 786 F.3d at 281; *see Stennis v. Bowie State Univ.*, 716 Fed. App'x at 166 (4th Cir. 2017 (per curiam)); *Guessous*, 828 F.3d at 217; *see also Love–Lane v. Martin*, 355 F.3d 766, 786 (4th Cir. 2004); *A Society Without A Name v. Virginia*, 655 F.3d 342, 350 (4th Cir. 2011).

Title VII's anti-retaliation provision, 42 U.S.C. § 2000e-3, "is broader than the anti-discrimination provision in at least two respects." *Strothers v. City of Laurel, Md.*, ___ F.3d ___, 2018 WL 3321317, at *4 (4th Cir. July 6, 2018). First, "the antiretaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm" because "[a]n employer can effectively retaliate against an employee by taking actions not directly related to his employment or by causing him harm *outside* the workplace." *Burlington N. and Santa Fe Ry Co. v. White*, 548 U.S. 53, 63 (2007) (emphasis in original). Therefore, retaliatory actions need not "affect the terms and conditions of employment" to fall within Title VII's prohibition. *Id.* at 64. But, retaliatory actions must be "materially adverse," so as to "'dissuade[] a reasonable worker from making or supporting a charge of discrimination.'" *Id.* at 68 (internal quotaions and citations omitted); *see also Thompson v. N. Am. Stainless, LP*, 562 U.S. 170, 174 (2011) (same).

Second, "the anti-retaliation provision protects employees even when they complain of actions that are not actually unlawful under Title VII." *Strothers*, 2018 WL 3321317, at *4. Therefore, "complaining employees are protected if, at the time of their complaint, they 'have an

---

[4] The Fourth Circuit recently clarified in *Strothers v. City of Laurel, Md.*, ___ F.3d ___, 2018 WL 3321317, at * 13 n.3 (4th Cir. July 6, 2018), that an "adverse *employment* action" is not the standard in a retaliation case. (Emphasis added). The adverse action "need not be employment or workplace–related in order to sustain a retaliation claim." *Id.* (citing, *inter alia*, *Lettieri v. Equant Inc.,* 478 F.3d 640, 650 n.2 (4th Cir. 2007)).

objectively reasonable belief in light of all the circumstances that a Title VII violation has happened or is in progress.'" *Id.* (citation omitted).

In a retaliation claim, "a 'protected activity' may fall into two categories[:] opposition and participation." *E.E.O.C. v. Navy Fed. Credit Union*, 424 F.3d 397, 406 (4th Cir. 2005). "An employer may not retaliate against an employee for participating in an ongoing investigation or proceedings under Title VII, nor may the employer take adverse employment action against an employee for opposing discriminatory practices in the workplace." *Laughlin v. Metro Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998). "To fall under the protection of the opposition clause . . . behavior need not rise to the level of formal charges of discrimination. The opposition clause has been held to encompass formal protests, such as voicing complaints to employers or using an employer's grievance procedures." *Armstrong v. Index Journal Co.*, 647 F.2d 441, 448 (4th Cir. 1981) (citation omitted).

To satisfy the second element of a retaliation claim, the plaintiff must show that he suffered an "adverse action." *See Strothers*, 2018 WL 3321317, at *5; *A Society Without A Name*, 655 F.3d at 350. As noted, unlike for a substantive discrimination claim, the adverse action element of Title VII's antiretaliation provision "is not limited to discriminatory actions that affect the terms and conditions of employment." *Burlington N. and Santa Fe Ry. Co.*, 548 U.S. at 64. Rather, the adverse action component can be satisfied by showing that the employer took "materially adverse" action in response to an employee engaging in a protected activity, "'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Id.* at 68 (internal quotations and citations omitted). *See also Williams v. Prince William Co., Va.*, 645 F. App'x 243, 244-45 (4th Cir. 2016) (per curiam).

As to the third element, there must ordinarily be "some degree of temporal proximity to suggest a causal connection." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 501 (4th Cir. 2005); *see Nnadozie*, 2018 WL 1830935, at *7. Thus, "[a] lengthy time lapse between the [defendant's] becoming aware of the protected activity and the alleged adverse . . . action . . . negates any inference that a causal connection exists between the two." *Constantine*, 411 F.3d at 501 (internal quotations and citation omitted).

And, "a lapse of as little as two months between the protected activity and an adverse employment action is 'sufficiently long so as to weaken significantly the inference of causation.'" *Clarke,* 962 F. Supp. 2d at 790 (quoting *King v. Rumsfeld,* 328 F.3d 145, 151 n.5 (4th Cir. 2003)); *see Wilcoxon v. DECO Recovery Mgmt., LLC*, 925 F. Supp. 2d 725, 732 (D. Md. 2013) (concluding that four months between the protected activity and alleged retaliatory conduct did not establish "temporal proximity"). Notably, "[t]o establish a causal connection between a protected activity and an adverse action, a plaintiff must prove that the protected activity preceded the adverse action and that the employer knew the employee engaged in a protected activity." *Gibson v. Marjack Co.*, 718 F. Supp. 2d 649, 655 (D. Md. 2010) (citing *Causey v. Balog*, 162 F.3d 795, 803-04 (4th Cir. 1998)); *see also Dowe v. Total Action Against Poverty*, 145 F.3d 653, 657 (4th Cir. 1998); *cf. Conrad v. CSX Transp., Inc.*, WMN-13-3730, 2014 WL 7184747, at *4 (D. Md. Dec. 15, 2014), *aff'd*, 824 F.3d 103 (4th Cir. May 25, 2016).

Absent temporal proximity between the protected activity and alleged retaliation, the court "'may look to the intervening period for other evidence of retaliatory animus.'" *Lettieri*, 478 F.3d at 650 (citation omitted). And, "Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action." *Nassar*, 570 U.S. at 352.

It is undisputed that plaintiff's filing of his July 30, 2016 EEOC Charge constitutes protected activity. Furthermore, accepting as true the facts alleged by plaintiff in his Complaint, as required in deciding a Rule 12(b)(6) motion, plaintiff was subject to an adverse action by MDGS. Among other things, "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits," is an adverse action. *Hoyle v. Freightliner*, LLC, 650 F.3d 321, 337 (4th Cir. 2011) (internal quotation marks and citation omitted). Moreover,

> [a] downgrade of a performance evaluation *could* effect a term, condition, or benefit of employment" if it has a tangible effect on the terms or conditions of employment. However, a poor performance evaluation is actionable only where the employer subsequently uses the evaluation as a basis to detrimentally alter the terms or conditions of the recipient's employment. An evaluation merely causing a loss of prestige or status is not actionable.

*James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 377 (4th Cir. 2004) (citations and internal quotations omitted) (emphasis in original).

Here, plaintiff has alleged that his lowered performance evaluation negatively affected the terms and conditions of his employment by causing monetary damages, "including but not limited to past and future loss of income, benefits, promotion and promotional opportunities, [and] career opportunities . . . ." ECF 1 ¶¶ 69, 72; *see also* ECF 4-3 at 45 (plaintiff stating that his lowered evaluation score will "used against [him] for not promoting [him] as a worker to new positions.").

To be sure, the Department insists that it did not lower the initial Performance Evaluation Score, contending that Bauman only "corrected [it] by entering the *identical* scoring information" in the proper column and "submit[ing] the corrected version to the plaintiff for review and signature." ECF 4-1 at 12 (citing Bauman Aff., ECF 4-3 at 3-4, ¶¶ 14-16 (emphasis in original). When resolving a Rule 12(b)(6) motion, however, "[c]ourts generally do not

"'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Edwards,* 178 F.3d at 243 (citation omitted). Instead, the factual allegations asserted in the complaint are accepted as true, and plaintiff must only set forth "enough factual matter . . . to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted). Accordingly, MDGS's factual dispute regarding the alleged adverse action may not be considered at this stage.

Thus, whether plaintiff's retaliation claim survives MDGS's Rule 12(b)(6) motion hinges on whether, as alleged, the protected activity and the adverse action were causally connected. Specifically, plaintiff has alleged that MDGS "knew of [his] engagement in protected activity prior to" reducing his Performance Evaluation Rating. ECF 1 ¶ 61. Plaintiff cites a letter of July 22, 2016, that he received from the EEOC after filing his initial Charge. ECF 7-1 at 7-8; ECF 7-3 at 2. In the letter, the EEOC states that, in response to plaintiff's Charge, it has "complied with the law and notified the employer that [he] filed a charge." ECF 7-3 at 2. Further, it is undisputed that Randall completed plaintiff's Performance Evaluation before his retirement on June 30, 3016, and on August 8, 2016, plaintiff signed the Performance Evaluation, noting that he disagreed with the "declined" numbers. ECF 1 ¶ 34; ECF 4-3 at 45. Thus, plaintiff alleges that, in between these two events, and after learning of his EEOC complaint, Bauman, "in August 2016," reevaluated him and reduced his score. ECF 1 ¶¶ 33, 35-36, 58-59.

Under the Rule 12(b)(6) standard, viewing the facts in the light most favorable to plaintiff, I conclude that plaintiff has set forth sufficient factual allegations with respect to his Title VII claim so as to survive dismissal.

### C.  Sufficiency of Plaintiff's Complaint - Count One Race Discrimination

In addition to asserting that plaintiff's work schedule allegations are unexhausted under Count One, *see supra* Section III-A.3, MDGS argues that it is entitled to summary judgment. *Id.* at 13-17. Count One contains two claims: a disparate treatment claim with respect to MDGS's alleged failure to change plaintiff's work schedule, and a failure to promote claim with respect to MDGS's decision to hire Kramer to the Regional Manager position for South Baltimore.

As noted above, plaintiff's allegations regarding his work schedule are unexhausted. Therefore, MDGS is entitled to dismissal of plaintiff's disparate treatment claim on that basis. Because MDGS's motion is construed only under Rule 12(b), however, this Court will not reach the Department's summary judgment argument regarding the failure to promote. That claim survives dismissal.

### IV.  Conclusion

For the reasons set forth above, defendant's Motion, construed as a motion to dismiss, is granted in part and denied in part.  An Order follows.

Dated: July 19, 2018                                             _____/s/_____
                                                                                 Ellen L. Hollander
                                                                                 United States District Judge